IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN M. HUNTER,

        Petitioner,

v.                                              Civil Action No. 5:12cv101
                                               (Judge Stamp)

TERRY O'BRIEN,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

On July 6, 2012, the petitioner, Steven Hunter, a federal inmate incarcerated at the United States Penitentiary at Hazelton, West Virginia ["USP Hazelton"], filed a *pro se* petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. On September 27, 2012, the respondent filed a motion to dismiss or, in the alternative, Motion for Summary Judgment and Response to Order to Show Cause. On October 1, 2012, a Roseboro Notice was sent to the petitioner. On November 29, 2012, the petitioner filed reply to the respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgement. This matter is before the undersigned for a Report and Recommendation pursuant to LR PL P 2.

### II. Contentions of the Parties

The petitioner raises three grounds for relief in his petition. First, he alleges that the BOP

1

has improperly assigned him a management variable of "greater security," enabling it to house him in a high security facility like Hazelton rather than a medium security institution. Second, he alleges that despite being approved for participation in the Residential Drug Abuse Program ("RDAP"), his designation to a high security institution has precluded him from participating in the program. Finally, the petitioner alleges that he has been denied the opportunity to participate in the Challenge Program. For relief, the petitioner asks this court to order the BOP to remove the management variable of "greater security" and transfer him to a medium security facility that offers the RDAP.

In his response, the respondent argues that the court should deny and dismiss the petition with prejudice because the petitioner concedes that he has not exhausted the BOP administrative remedies on any of his three grounds for relief and because his allegation that USP Hazelton officials prevented said exhaustion is contradicted by the evidence of record. Moreover, even accepting the petitioner's allegation of interference as true, and assuming exhaustion should be excused, the petitioner's claims are without support in law because a federal prisoner does not possess a liberty interest in his security classification or participation in particular treatment programs. Finally, the respondent notes that the petitioner's allegation with respect to the Challenge Program are moot because he was admitted to participate in said program at or about the time he filed the instant petition.

In response, the petitioner reiterates his contention in his petition that USP Hazelton officials have and continue to refuse to provide him with administrative remedy forms. Therefore, the petitioner maintains that he should be excused from exhausting his remedies. Moreover, the

petitioner notes that the Prison Litigation Reform Act ("PLRA") is not applicable to habeas petitions, and therefore, exhaustion is not required. The petitioner also argues that BOP Program Statement 5100.08, mandates that when a management variable of greater security is placed on an inmate, it must be based on institutional behavior supported by a finding by a Disciplinary Hearing Officer of guilt and/or in compliance with the criteria set forth in the Program Statement of inmate discipline or special housing unit.

### III. Factual Background

On February 1, 1996, the petitioner was sentenced in the Superior Court for the District of Columbia to a term of thirty-one (31) years in prison after a jury found him guilty of assault, first degree burglary, assault with a dangerous weapon, aggravated assault while armed, and possession of a firearm during a crime of violence or dangerous offense. (Doc. 23-1, pp. 13-16). On January 17, 2012, the petitioner was designated to USP Hazelton[1], a high security institution located in Bruceton Mills, West Virginia. The BOP designated the petitioner to this high security institution because the agency had previously classified him as requiring high security on January 29, 2008, due in part to his public safety factor classification of "greater security." (Doc. 23-1, p. 10).

Upon his designation to USP Hazelton, the petitioner was assigned to the B-1 Unit. (Doc. 23-1, p. 21). While housed there, the petitioner's B-1 Unit Team was composed of Correctional Counselor Desiree Young-Hoskin, Case Manager Chris Henderson, and Unit Manager David LeMaster. (Docs. 23-2, 23-3, 23-4). Each member of the petitioner's B-1 Unit Team denies ever

---

[1] The petitioner previously had been incarcerated at the Florence Federal Correctional Complex located in Florence Colorado which is also a high security facility. (Doc. 23-1, p. 21).

refusing him a grievance form or harassing or threatening him in response to such a request. (Id.).

In March of 2012, the petitioner began to file institutional grievances related to the Challenge Program and his high security classification. With regard to the Challenge Program, the petitioner filed Administrative Remedy Number 678402-F1 at USP Hazelton on March 2, 2012, seeking enrollment in the program. On March 30, 2012, USP Hazelton denied and closed the remedy. On April 6, 2012, the petitioner appealed the remedy to the Mid-Atlantic Regional Office, and on April 30, 2012, the remedy was accepted. As of September 24, 2012, there had been no regional response. (Docs. 23-1, p. 3, 23-1. p. 6).

With respect to his high security classification, the petitioner filed Administrative Remedy Number 68505-F1 and Administrative Remedy Number 680494-F1 at USP Hazelton on March 19, 2012, seeking a classification review. That same day, USP Hazelton rejected both remedies because the petitioner had marked them as sensitive, and therefore, needed to file them in the first instance at the regional level. The petitioner did not appeal the rejections or re-file either remedy at the regional level. (Docs. 23-1, p. 3, 23-1, pp. 7,8). Also on March 19, 2012, the petitioner filed Administrative Remedy Number 680513-F1 at USP Hazelton requesting access to the informal resolution process. On March 27, 2012, USP Hazelton denied the remedy because informal resolution was already available. The petitioner did not appeal the denial. (Docs. 23-1, p.3, 23-1, p. 9).

Including the March remedies identified above, the petitioner has filed 735 remedies while in BOP custody. (Doc. 23-1, p.2). However, the petitioner has completed the administrative remedy process on only seventeen (17) occasions, the last of which occurred on October 28, 2010,

4

over a year before the petitioner was designated to USP Hazelton.

On June 28, 2012, the petitioner was moved from the B-1 Unit to the A-2 Unit. (Doc. 23-1, p. 21). Currently, the petitioner's A-2 Unit Team is composed of Correctional Counselor Eric W. Griffith and Unit Manager and Case Manager Tammy Titchenell. Both these individuals also deny ever refusing the petitioner a grievance forms or harassing or threatening him in response to such a request. (Docs. 23-5, 23-6).

On June 29, 2012, the petitioner began participation in the Challenge Program. (Doc. 23-1, p. 11). That same day, the petitioner deposited the instant petition in the prison mail for delivery to this court. (Doc. 1, p. 21).

### IV. Standards of Review

**1) Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. V. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S.

5

544, 555 (2007)(*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegation," but must "contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.* (citations omitted), to one that is "plausible on its face," *Id.* at 570, rather than merely "conceivable." *Id*. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] or claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickinson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard adopted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**2)    Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment

6

motions in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard of summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. V. Catrett,* 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celtotex* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." *Anderson* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party." *Matsushita,* at 587 (citations omitted).

V. Analysis

1) **Exhaustion of Administrative Remedies**

In the response to the petition, the respondent argues that the instant § 2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner maintains that BOP officials prevents him from exhausting his administrative remedies by refusing to give him the forms necessary to exhaust his administrative remedies. The respondent has provided the Court with affidavits from the petitioner's unit staff members while housed at USP Hazelton, and each denied that he or she refused to provide him with grievance forms or threatened him in response to such a request. The petitioner has provided the Court with no additional details supporting his allegations, and has offered nothing to refute the affidavits.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. *See LaRue v. Adams*, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 1131 (1997)).[2]

---

[2] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. *See Larue* at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**2) Petitioner's Custody Classification**

The Petitioner sole ground for relief is his allegation that his maximum custody assignment is erroneous. More specifically, he alleges that the BOP failed to follow its own policy because he does not have Unit Disciplinary Committee/ Disciplinary Hearing Officer finding of guilt and no other factor that would justify a management variable of greater severity.

---

established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

BOP Program Statement 5100.08 provides policy and procedure regarding the Bureau of Prisons inmate classification system. As noted by the statement, classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets the programs needs and is consistent with the Bureau's mission to protect society.

Initial designations to BOP institutions are initiated, in most cases, by staff at the Designation and Sentence Computation Center in Grand Prairies, Texas. There, staff assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office about the inmate into a computer database known as SENTRY. SENTRY then calculates a point score for that inmate which is then matched with a commensurate security level institution. (PS 5100.08, Ch.1, p2).

Maximum custody is the highest custody level to which an inmate can be assigned. This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution. (P.S. 5100.08, Chapter 2, p. 3.) Pursuant to BOP policy, each inmate's custody classification is reviewed annually, with the inmate's unit team and/or Warden being the final review authority. (P.S. 5100.08, Chapter 6, pp.1-2.) The intent of the Custody Classification System is to permit staff to use professional judgment within specific guidelines. Id.

Here, the record indicates that BOP staff used their professional judgment when designating Petitioner as a maximum custody level inmate in 2000. This classification was based on his detainer status, the seriousness of both his prior and current conviction, and the level of violence involved in his crime. As noted in the remarks section, he had a prior history in 1995 of

assault with a dangerous weapon and his instant offense included beating a victim with a gun, and shooting a victim while the victim was in bed. Accordingly, it would appear that the petitioner was properly designated as a maximum custody inmate.

Even if the Court finds that the petitioner's custody level is incorrect, such an error does not rise to the level of a due process violation. Federal inmates do not possess a protected liberty interest in security classification. *See Posey v. Dewalt*, 86 F.Supp.2d 565, 571 (E.D. Va 1999); *Grayson v. Federal Bureau of Prisons*, 2011 WL 7154384, *3 (N.D. W.Va. July 22, 2011)(Kaull). Instead, security classification is reserved to the sole discretion of prison officials. *See Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994).

To the extent, the petitioner alleges that his maximum custody classification has prevented him from being housed at a Federal Correctional Institution (FCI), thereby barring him from participating in certain rehabilitation programs, the same fails to state a ground for relief. 18 U.S.C. § 4081 gives prison officials full discretion to determine prisoner classification and eligibility for rehabilitative programs in the federal system. Moreover, an inmate has no constitutional entitlement to rehabilitative programs, and the denial of access to them does not rise to the level of a due process violation. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Therefore, the fact that the petitioner cannot access certain rehabilitative programs, such as RDAP, that are exclusive to FCI facilities does not constitute a due process violation.

Finally, it should be noted that the petitioner acknowledges that he has been admitted to the Challenge Program. Accordingly, that claim is moot.

## VI. Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 22) be **GRANTED**, and the petitioner's § 2241 petition (Doc. 1) be **DENIED and DISMISSED WITH PREJUDICE.**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Court Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to counsel of record via electronic means.

DATED: May 7, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE